UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MELISSA GALE JOHNSON and ERNEST WADE JOHNSON, as co-conservators on behalf of their adult son ROBERT LEE JOHNSON, | ) ) ) ) ) ) |
| Plaintiff, | ) ) NO. 3:15-cv-01495 ) CHIEF JUDGE CRENSHAW |
| v. | ) ) |
| RUTHERFORD COUNTY, TENNESSEE, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Melissa and Ernest Johnson ("Plaintiffs") brought this action on behalf of their son Robert Lee Johnson ("Johnson") against Rutherford County, Tennessee, the Rutherford County Sheriff, and other defendants associated with the Rutherford County Adult Detention Center ("RCADC"), including Rudd Medical Services, PLC ("RMS"), the contract provider of medical services at the RCADC, and RMS Director of Health Services Ken Tucker, R.N. ("Tucker"). The case arises out of an incident at the RCADC in which a mentally ill inmate named Guy Mitchell, Jr. assaulted Johnson and caused permanent injuries. Defendants Rutherford County and the Rutherford County Sheriff brought a Crossclaim against RMS. All claims in this case have now been resolved except for Plaintiffs' two causes of action against RMS and Tucker for violations of (1) the Fourteenth Amendment under 18 U.S.C. § 1983 and (2) the Tennessee Health Care Liability Act ("THCLA"), Tenn. Code Ann. § 29-26-101, et seq.

Tucker and RMS have filed a Second Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 146), to which Plaintiffs have responded in opposition (Doc. No. 156)

and the movants have replied (Doc. No. 161). Tucker and RMS referenced extensive materials outside the pleadings, and the parties fully briefed the motion with statements of facts and supporting evidentiary materials. The Court will therefore consider the motion as one for summary judgment.[1] Fed. R. Civ. P. 12(d).

I.

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). After the movant has satisfied this initial burden, the nonmoving party has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, summary judgment should be granted. Anderson, 477 U.S. at 479-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

---

[1] The Court finds that the notice requirements of Rule 12(d) have been satisfied and that it may rule without delay.

2

II.

Tucker and RMS seek dismissal of Plaintiff's Section 1983 deliberate indifference claim on the grounds that (1) Plaintiffs failed to fully comply with certain Tennessee pre-suit notice requirements and (2) the undisputed facts show that Tucker did not have final policymaking authority for RMS regarding the segregation of Mitchell at the RCADC. The latter issue is dispositive.

As the Magistrate Judge correctly observed, liability can attach based on a single decision by an official vested with final policymaking authority. (Doc. No. 121 at 16 (citing Paige v. Coyner, 614 F.3d 273, 284 (6th Cir. 2010)); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (holding liability may exist where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"). Importantly, "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id. at 481-82. Rather, the authority to exercise discretion while performing particular functions may only make a municipal employee a final policymaker where the official's decisions are (1) "final and unreviewable" and (2) "are not constrained by the official policies of superior officials." Miller v. Calhoun Cty., 408 F.3d 803, 814 (6th Cir. 2005) (quoting Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir. 1993)). Three other points of law are relevant. First, the person alleged to have final policymaking authority must have that authority "concerning the action alleged to have caused the particular constitutional or statutory violation at issue." McMillian v. Monroe Cty., 520 U.S. 781, 784-85 (1997). Second, the fact that a person who has authority to make a recommendation, which can be implemented only upon subsequent approval by a governing

3

authority, fails to make a recommendation does not convert the recommender into a final policymaker. Adkins v. Bd. of Educ. of Magoffin Cty., Ky., 982 F.2d 952, 959 (6th Cir. 1993). Finally, whether a particular official has 'final policymaking authority' is informed by state law. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 738 (1989) (citing St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)).

III.

The gravamen of Plaintiffs' second amended complaint is that (1) Tucker, in his capacity as Director of Health Services for RMS, was warned that Mitchell was unstable and potentially dangerous due to psychiatric problems; (2) Tucker and RMS did not properly treat and segregate Mitchell from Johnson, and, (3) as a result, Mitchell attacked Johnson. (Doc. No. 123.) The Magistrate Judge previously ruled that Plaintiffs did not sufficiently allege the existence of an RMS policy or custom of non-communication with the RCADC that caused an injury to Johnson, and that Plaintiffs' requested amendments were insufficient to resuscitate such a claim. (Doc. No. 121 at 10-16.) However, the Magistrate Judge allowed Plaintiffs to amend their complaint so that it alleged: "Tucker told [Mitchell's aunt and mother] that he could not do *anything about transferring or segregating* Mitchell because he 'had not crossed the line.' Thus, [RMS's] custom or policy was *to do nothing about segregating* a mentally ill inmate known to have assaulted inmates and to be a threat to other inmates until he assaults another inmate." (Doc. No. 123 at ¶ 20 (emphasis added).) The Magistrate Judge found that, via this paragraph, Plaintiffs had sufficiently alleged "that Tucker acted as a final decision making authority by declining to transfer or segregate Mitchell despite knowing about his violent history," and had stated "a plausible claim against RMS based on Tucker's statement." (Doc. No. 121 at 16-17.) To defeat the motion for summary judgment, therefore, it is necessary for Plaintiffs to have adduced evidence that raises a dispute of

4

material fact concerning whether Tucker *actually* had final policymaking authority at the RCADC over the segregation of Mitchell.

Based on both the facts and the law, the Plaintiffs have failed to do so. Critically, the following facts are undisputed at summary judgment:

1. RMS is an independent contractor of Rutherford County that has internal policies and procedures for providing medical treatment. Under its contract with Rutherford County, however, RMS is required to maintain standards established by the Sheriff of Rutherford County. The Rutherford County Sheriff supervises and signs all of RMS's policies and procedures.[2] (Doc. No. 159 at ¶¶ 34, 38);

2. "[RMS's] medical team, including Mr. Tucker, *does not have the authority to place an inmate in segregation* or order that an inmate be placed in segregation." (Id. at ¶ 12 (emphasis added));

3. Rutherford County *Sheriff's Office's Policy No. 17-02* governs all types of segregation at the RCADC. Policy No. 17-02 defines "medical segregation," among various other types of segregation, as "segregation following *a recommendation by Medical Services* due to safety concerns based on medical conditions" and specifies that it is "*administered or determined by the Shift Supervisor, Assistant Jail Administrator or*

---

[2] In Dr. Ken Rudd's deposition, he was asked "Why is the sheriff and the commander signing a Rudd Medical policy?" Dr. Rudd responded: "Because this is really a sheriff's policy. We work underneath the sheriff's department, but the sheriff has us as a contractor. . . . This is his policy and it is effected by [Commander] Tommy Thompson, who is over detention. And then with me over medical, I am responsible for the medical component of it underneath the sheriff." (Doc. No. 150-16 at 2-3.) Dr. Rudd was then asked: "So even though at the top it says "Rudd Medical Services Policy and Procedure," and it's at the top of all these policies that we are going to look at, but that's just, what you are saying, under the umbrella of the sheriff's department?" Dr. Rudd responded: "That's correct." (Id. at 4.)

5

*above.*" The policy states that "[i]nmates *may* be placed in the Medical Pod following *recommendations* by Medical Services." (Doc. No. 150-19 at 1-3 (emphasis added).);

4. "Based on all applicable Policies and Procedures and as it pertains to *inmate housing*, [RMS's] medical team, including Mr. Tucker, *only has the discretion to recommend* to the [RCADC] staff that an inmate be housed alone due to safety concerns based on medical conditions." (Doc. No. 159 at ¶ 13 (emphasis added));

5. "*Only the [RCADC] staff* may make the final determination regarding *housing placement for inmates*," and "*[t]he [RCADC] staff may veto [RMS's] recommendation* that an inmate be housed alone."[3] (Id. at ¶¶ 14, 15 (emphasis added)); and

6. Under its contract, RMS is *required* to comply with all policies and procedures of the Rutherford County Sheriff's Office. (Id. at ¶ 36.)

In sum, the undisputed record reflects that, while RMS had internal procedures regarding the provision of medical treatment, it served under the auspices of the Rutherford County Sheriff and was clearly bound by the Sheriff Office's policies and chain of command concerning inmate segregation at the RDADC. Indeed, Policy 17-02 sets forth the fully non-final and reviewable role of Medical Services in segregation decisions by the Sheriff's Office administration. There is no evidence that Tucker's segregation recommendations (or non-recommendations, as the case may be) were "final and unreviewable" or "unconstrained by the official policies of superior officials." Miller, 408 F.3d at 814. Tucker – a "recommender" – simply did not have final policymaking authority regarding the segregation of inmates (on the day of Mitchell's attack or on any other

---

[3] In Sheriff Arnold's deposition, he was asked: "And so . . . the medical staff could make a recommendation that a patient be – or an inmate be housed alone, but ultimately the jail staff had the final decision-making authority?" The Sheriff responded: "We had veto power." (Doc. No. 150-14 at 2-3.)

6

Case 3:15-cv-01495   Document 190   Filed 05/14/18   Page 6 of 10 PageID #: 2297

day). Rather, Tucker and RMS could merely make suggestions, however strong, to the Sheriff's staff at the RCADC, who could decline to adopt them and retained the express authority to make the official determinations.

The Sheriff's final policymaking authority regarding inmate housing at the RCADC is echoed in relevant law. In Tennessee, "the Sheriff is the final policymaker over the operation of the jail." Shorts v. Bartholomew, 255 F. App'x 46, 52 (6th Cir. 2007) (citing Tenn. Code Ann. § 8-8-201(a)(3) ("It is the sheriff's duty to . . . [t]ake charge and custody of the jail of the sheriff's county, and of the prisoners therein; receive those lawfully committed, and keep them personally, or by deputies or jailer, until discharged by law[.]"); § 8–8–221(a) ("Except for state prisoners held in the county jail, no person shall be incarcerated in the county jail without the approval of the sheriff, or the sheriff's designee, subject to approval of the court having criminal jurisdiction over the sheriff's jurisdiction, as provided by regulation.")); Doe #1 v. Cravens, No. 2:17-cv-00049, 2018 WL 1522401, at *4 (M.D. Tenn. Mar. 28, 2018) (same); Freeman v. Weatherford, No. 3:12-cv-266, 2012 WL 2344633, at *5 (M.D. Tenn. June 20, 2012) (noting that "[i]n Tennessee, it is generally accepted that the sheriff is the final policymaker over the operation of a county jail" and that "[t]he jail administrator may also be presumed to make and to implement policy," and concluding that the sheriff and jail administrator were the decision makers for claims involving policies behind inadequate security, supervision of inmates, and medical care); Heflin v. Stewart Cty., Tenn., 958 F.2d 709, 713 (6th Cir. 1992) (in case involving a hanging in a jail cell, noting without disagreement that it was stipulated that the sheriff was "the policymaker regarding . . . the county jail"); see also, e.g., Miller, 408 F.3d at 814 (under Michigan law, where the sheriff also had final policymaking authority over the county jail, finding that a medical worker vested with authority to make limited decisions was still subject to review and did not possess authority to

7

formulate plans for the implementation of broad jail goals). Id. Plaintiffs have offered no contradictory legal authority.[4]

Because there is no evidence that Tucker (or anyone at RMS[5]) acted as a final policymaker regarding the segregation of inmates at the RCADC, RMS is entitled to summary judgment on the Section 1983 claim.[6] Tucker is also entitled to summary judgment because the remaining Section 1983 claim against him is in his official capacity only (see Doc. No. 145) and an official capacity claim against an individual is, in all respects other than name, to be treated as a suit against the

---

[4] Contrary to Plaintiffs' argument (Doc. No. 157 at 31), the frequency with which the RDADC staff adopted RMS's recommendations is immaterial under the law. See Prapotnik, 485 U.S. at 130 ("Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy. It is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them."); Miller, 408 F.3d at 814 (holding that the fact that subordinate personnel in jails "follow protocol" in dealing with inmates does not mean that they have been delegated final authority to implement policy).

[5] Plaintiffs briefly raise an alternative argument that liability might attached because Dr. Rudd, purportedly with final policymaking authority, ratified the actions of Tucker, who lacked that authority. However, for the reasons discussed above, *no one* at RMS had final decision making authority over the segregation of inmates at the RDADC. Where the deciding factor is that *the Sheriff's office* had authority over segregation of inmates, Plaintiffs cannot conjure up liability by merely moving their target to someone higher-up *at RMS*.

[6] Plaintiffs' substantive case hinges on a conversation that several of Mitchell's relatives had with Tucker. But this conversation occurred months prior to the attack on Johnson. (Doc. No. 163 at 6-7.) Subsequent to that conversation: (1) the RMS medical team saw Mitchell to address his medical and mental health needs somewhere between 11 and 24 times prior to the attack (Doc. No. 159 at ¶ 21); (2) "[t]he [RMS] medical team recommended that inmate Mitchell be housed alone whenever it determined that he needed to be housed alone due to safety concerns based on medical conditions" (id. at ¶ 16); (3) Mitchell was actually segregated on multiple occasions (id. at ¶ 19); and (4) "Mitchell did not notify Tucker or anyone else from the RMS medical team, on or about the date of the attack, that he was threatening to assault [ ] Johnson and that he needed to be removed from his cell" (id. at ¶¶ 21, 29). Therefore, it is questionable whether Plaintiffs could even make out a case for deliberate indifference if they had an actionable policymaker to pursue. However, because this matter is being dismissed on the above grounds, the Court need not explore this issue further.

8

Case 3:15-cv-01495   Document 190   Filed 05/14/18   Page 8 of 10 PageID #: 2299

entity of which the officer is an agent. Kentucky v. Graham, 473 U.S. 159, 166 (1985); Foster v. Michigan, 573 F. App'x 377, 390 (6th Cir. 2014).

IV.

The Court may decline to exercise supplemental jurisdiction over a state law claim if it dismisses "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "In determining whether to retain jurisdiction over [a] state-law claim[], a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claim[] . . . ." Id. at 952 (quoting Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)). Plaintiffs' THCLA claim is a creature of state statute and implicates state law principles (e.g., professional standards of care, proximate cause) that Tennessee courts routinely and skillfully consider. After weighing the relevant factors, the Court does not find any reason to depart from general rule, and therefore declines to retain supplemental jurisdiction over the Plaintiffs' THCLA claim.

V.

The Second Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 146) will be granted. Plaintiff's federal Section 1983 claim will be dismissed with prejudice. The Court will decline to exercise supplemental jurisdiction over the Plaintiffs' remaining THCLA claim and it will be dismissed without prejudice.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE